**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ELLEN HEINE, et al., | |
| Plaintiffs, | Civil Action No. 11-2655 (ES) (JAD) |
| v. | |
| CITY OF GARFIELD, et al., | OPINION |
| Defendants. | |

SALAS, DISTRICT JUDGE

This matter comes before the Court with an extensive history—almost eight years' worth. During that time *pro se* Plaintiff Ellen Heine ("Plaintiff") has been involved in several related suits and administrative proceedings, both in state and federal court. Indeed, after having filed and litigated more than half-a-dozen cases against New Jersey municipalities and agencies, Plaintiff is no stranger to litigating in federal court or to the showing required to assert a *Monell* claim under 42 U.S.C. § 1983. *See Monell v. Dep't. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).

This matter was one of the first cases Plaintiff filed in this District after the events that transpired in late 2010 in the City of Garfield. Now before the Court is Defendant City of Garfield's ("Garfield's") motion for judgment on the pleadings, seeking to dismiss Plaintiff's Third Amended Complaint (the "Complaint"). (D.E. No. 119). The Court has considered the parties' submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons the Court GRANTS Garfield's motion and dismisses the Complaint *with prejudice*.

# I. Factual Background

Plaintiff is the owner of the property located at 515 Van Bussum Avenue at Garfield, New Jersey (the "Property"). (D.E. No. 100-3, Third Amended Complaint ("TAC") ¶ 1). Much of the factual background giving rise to the present claims against Garfield has been discussed *ad nauseam* by the many related lawsuits Plaintiff has filed. *See Heine v. Comm'r of Dep't of Cmty. Affairs of New Jersey*, 337 F. Supp. 3d 469, 472–75 (D.N.J. 2018) (summarizing the various suits involving the Property); *see also Fabics v. City of New Brunswick*, No. 13-6025, 2015 WL 5167153, at *1 (D.N.J. Sept. 3, 2015), *aff'd sub nom. Estate of Fabics v. City of New Brunswick & its Agents*, 674 F. App'x 206 (3d Cir. 2016); *Heine v. City of Garfield*, No. 014091-2014, 2017 WL 65237, at *2 (N.J. Tax Ct. Jan. 3, 2017).

Although the Court assumes the parties' familiarity with the facts and procedural history of this matter, the Court details the relevant background below for the benefit of the public.

## A. Factual Background

In relevant part, Plaintiff alleges that she, her tenants, and their respective families lived at the Property until September 2010. (TAC ¶¶ 1 & 14). Sometime between September 2 and September 8, 2010, an unknown police officer contacted the Department of Community Affairs, Bureau of Rooming and Boarding Home Standards, to report that Plaintiff was running an illegal rooming house. (*Id.* ¶ 48). On or about September 14, 2010, Garfield construction and fire officials, including Gerald Walis, conducted an inspection of the Property. (*See id.* ¶ 49). These officials accessed the Property with the consent of one of the tenants. (*Id.* ¶ 51). As a result of the inspection, Walis issued several notices to Plaintiff indicating that the Property was in violation of the Uniform Construction Code ("UCC") and the Uniform Fire Code ("UFC"). (*See id.* at 28–

31).[1]  Particularly, Walis issued Notices and Orders of Penalty because additional rooms had been constructed in the attic without permits, violating the UCC.  (*Id.* at 21 & 28–30).  Additionally, the inspection uncovered at least eleven violations of the UFC, prompting Walis to issue a Notice of Violations and Order to Correct (the "Imminent Hazard Notice").  (*See id*. ¶¶ 20 & 53; *id.* at 31–34).  The Imminent Hazard Notice required Plaintiff and her tenants to vacate the Property until Plaintiff completed certain necessary repairs outlined by the notice.  (*See id*. ¶ 20).  Plaintiff and her tenants vacated the property shortly thereafter.

The Complaint alleges other entries into the Property.  Plaintiff alleges that on September 2, 2010, two unknown police officers entered "the closed stockade fence at the side of the Property and entered the freestanding garage that was within the enclosure and at least sixteen feet from the house."  (*Id.* ¶ 45).  These officers removed a gun safe and, apparently, certain "antique guns."  (*Id.* ¶¶ 45 & 46).  Plaintiff alleges that only she and two of her tenants, Christopher Grieco and Ethel Hawkins, had keys to the garage.  (*See id.* ¶ 46).

Plaintiff next alleges that in October and November of 2010, agents of Stephen Gilbert[2] were apparently permitted by Garfield to enter the Property on two occasions.  (*See id.* ¶¶ 54 & 55).  Plaintiff also alleges that in April of 2011, an individual from the Bergen County American Society for the Prevention of Cruelty to Animals ("ASPCA") climbed through a window of the Property, despite not having a warrant.  (*Id.* ¶ 61; *see also id.* at 59).  The Complaint does not state how this ASPCA individual is connected to Garfield.  (*See generally* TAC).

---

[1]  All citations to a page number in the TAC refer to ECF pagination.

[2]  Stephen Gilbert is the son of the original mortgagor and prior owner of the Property, Dr. Gilbert.  *See Heine*, 337 F. Supp. 3d at 481 n.15.  "A number of machinations culminated in a State court order awarding Heine title to the Property provided that she satisfied Gilbert's $46,000 mortgage, and granting her the option either to assume and discharge the mortgage or else to sell the property.  When she failed to do either, the court entered an order compelling her to sell the property, which she has not done."  *Id.* (citing *Gilbert v. Heine*, No. A-0145-14T4, 2017 WL 370904 (N.J. Super. Ct. App. Div. Jan. 25, 2017)).

Finally, on May 2, 2011, the police department received reports that a person entered the Property and that animals were being stored at the Property. (*Id.* at 21 & 39). The police report states that upon entering the Property, the officers discovered that a woman identified as Justyna Gaszczyk was inside. (*Id.* at 39). The officers observed that the building was populated by approximately 20 cats and a pitbull, which were malnourished and in very poor health. (*Id.* at 39–40). Gaszczyk told the officers that her friend, Plaintiff, had asked her to take care of the animals. (*See id.* ¶ 63; *id.*at 40).

The report notes that "every room was occupied by at least two to three cats" and the "floors were covered in feces." (*Id.* at 40). As a result of the animals' feces and urine, a strong odor permeated the building. (*See id.*). Upon seeing this, the officers notified Garfield's fire, building, and health inspectors. (*Id.*). The officers also notified Bergen County animal control to remove the animals. (*Id.*). Plaintiff alleges that these Garfield "agents" entered the building without her consent, removed the animals, and boarded-up the Property. (*Id.* ¶¶ 64–65); *see also Heine*, No. 14091-2014, 2017 WL 65237, at *2 & n.4 (noting that the Property was boarded up because it was deemed unsafe and because there was "evidence that individuals were accessing the subject property and bringing animals onto the property," up to 54 cats at one point).

Plaintiff alleges that since she was forced to vacate the Property, she and her agents have not been allowed to enter the building. (TAC ¶¶ 23, 30–31 & 66). She makes references to police records dated September 4, 2011, January 27, 2012, and January 29, 2012, which indicate that police officers prevented her from entering the Property. (*Id.* ¶¶ 31–33 & 66). Plaintiff also alleges that she has been charged excessive property taxes, even though she has been unable to use the Property since she vacated it in September of 2010. (*Id.* ¶¶ 73 & 124–129).

Plaintiff's Complaint also points the Court to Garfield Ordinance 1723, § 181-3 ("§ 181-

3"). (*Id.* ¶ 16). § 181-3 "requires that residents allow inspectors to enter their home at all reasonable times" and permits Garfield to issue criminal summons on property owners who refuse the grant entry to an inspector. (*See id.* ¶¶ 16 & 18). Plaintiff alleges that between 2009 and 2010 Garfield issued summonses to Plaintiff on four separate dates for failure to allow an inspection. (*Id.* ¶ 18). Plaintiff was tried and found guilty in Garfield Municipal Court, but she appealed the decision. (*Id.*). On January 31, 2012, a New Jersey appellate court issued a published opinion which specifically found that § 181-3 violated the Fourth Amendment. (*Id.* ¶ 34); *see State v. Heine*, 35 A.3d 691, 701 (N.J. Super. App. Div. 2012). The decision overturned two of the summonses against Plaintiff for failure to permit the inspection. *Heine*, 35 A.3d at 701. But the decision upheld other ordinances and related civil fines imposed on Plaintiff for failing to maintain sidewalks free from dangerous conditions and for failing to maintain windows and the exterior surface of her Property in good condition. *Id.* at 702.

Plaintiff alleges that despite the state court's decision, Garfield continued to dispute the validity of § 181-3 by appealing. (TAC ¶¶ 78, 89 & 94). Further, she notes that even when Garfield amended § 181-3, it still failed to comply with the Fourth Amendment. (*Id.* ¶¶ 81 & 90–91). This prompted Plaintiff to file another action in Superior Court, during which the judge "suggested" a change in the language of the ordinance, which Garfield implemented. (*Id.* ¶¶ 81 & 91–92). Plaintiff asserts that these actions demonstrate Garfield's indifference to the Fourth Amendment and show Garfield had an unlawful policy and custom. (*See id.* ¶¶ 17, 18, 95 & 117).

Plaintiff does not allege any other Garfield policy or custom, relying only on § 181-3 as the basis of her *Monell* claims. (*See generally id.*; D.E. No. 125 at 2). Moreover, aside from alleging that between 2009 and 2010 she received four summonses for, and she was found guilty of, violating § 181-3 (*see* TAC ¶ 18), Plaintiff does not provide any other factual allegations to

support those incidents. Rather, Plaintiff's alleged injuries and factual allegations are all focused on the events that occurred beginning in September 2010. (*See generally id.*).

**B. Procedural History**

This action was originally filed on May 6, 2011. (*See* D.E. No. 1). Plaintiff subsequently amended her pleadings one week later (D.E. No. 2), and then filed a Second Amended Complaint on February 24, 2012, without leave of Court. (D.E. No. 11). On November 30, 2012, Plaintiff filed a motion to amend her pleading to add her tenants as plaintiffs, as well as to add several Garfield officials as defendants. (*See* D.E. Nos. 19 & 20). The Court denied this request, particularly noting that Plaintiff could not represent her former tenants. (D.E. No. 26). Shortly thereafter, Plaintiff again sought to amend and add her tenants as plaintiffs (D.E. No. 32), which the Court denied (D.E. No. 41).

On May 19, 2015, Garfield moved for summary judgment (D.E. No. 60), and on July 27, 2015, Plaintiff filed a cross-motion for partial summary judgment (D.E. No. 74). On October 7, 2015, during a scheduled hearing, the Court uncovered that the parties had failed to properly exchange all fact discovery. (*See* D.E. Nos. 84 & 88). The Court denied the motions for summary judgment *without prejudice* and ordered the parties to review and complete fact discovery. (*See* D.E. No. 85).

Garfield then filed a motion for judgment on the pleadings. (D.E. No. 86). After holding oral argument and extensively discussing the underlying factual basis of each claim with the parties, the Court granted Garfield's motion but permitted Plaintiff to file one final amended complaint. (*See* D.E. Nos. 96 & 97). Plaintiff then moved for reconsideration (D.E. No. 98), which the Court denied. (D.E. Nos. 103 & 104).

On August 22, 2016, Plaintiff filed the instant Complaint. (*See* TAC & D.E. No. 101).

The Complaint again sought to assert claims on behalf of two of Plaintiff's tenants, Amanda Grieco and Kara Grieco. (*See* TAC). It also added several Garfield employees and officials as defendants. (*Id.*). After filing an answer (D.E. No. 102), Garfield moved for judgment on the pleadings (D.E. No. 110). On February 13, 2018, the Court dismissed all claims Plaintiff was asserting on behalf of Amanda Grieco and Kara Grieco, dismissed all claims against all defendants except Garfield, dismissed Count III *with prejudice*, and reserved determination on the remaining claims Plaintiff was asserting against Garfield pending additional briefing. (D.E. No. 118). Thereafter, Garfield and Plaintiff briefed the instant motion. (D.E. Nos. 119, 124 & 125).

Per the Court's February 13, 2018 Order, only the claims against Garfield in Counts I, II, IV, and V remain. (*See* D.E. No. 118). These Counts are 42 U.S.C. § 1983 *Monell* claims: Count I – Violation of Fourth Amendment; Count II – Violation of the Fourteenth Amendment Due Process clause and Fifth Amendment right to property through inverse condemnation; Count IV – First Amendment retaliation; and Count V – Fifth Amendment violation of right to property due to excessive property taxes.

## II. Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). When adjudicating a motion for judgment on the pleading that seeks dismissal for failure to state a clam, the court applies the same standard as under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(h)(2); *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

To state a claim a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Neither a claimant's "blanket assertion[s]" of a right to relief nor "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" satisfy Rule 8(a)(2)'s requirements. *Twombly*, 550 U.S. at 556 n.3.

Rule 8(a)(2)'s pleading standard also requires that a complaint set forth the plaintiff's claims with enough specificity as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. The complaint must contain "sufficient facts to put the proper defendants on notice so they can frame an answer" to the plaintiff's allegations. *Dist. Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO by Cronin v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986); *see also Pushkin v. Nussbaum*, No. 12–0324, 2013 WL 1792501, at *4 (D.N.J. Apr. 25, 2013) ("[T]he Court cannot expect the Defendants to defend against claims that are not clearly and specifically alleged.").

In assessing a Rule 12(b)(6), or as here, a 12(c), motion, "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference drawn therefrom." *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678. A court therefore must first separate a complaint's facts from its legal conclusions and then assess whether those facts raise a plausible claim for relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–12 (3d Cir. 2009).

Relevant here, the Court notes that "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Yet there are

limits to [the court's] procedural flexibility" when it comes to *pro se* litigants. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). *Pro se* litigants are not relieved of the obligation to plead enough factual matter to meet Rule 8(a)(2)'s plausibility standard. *See Franklin v. GMAC Mortg.*, 523 F. App'x 172, 172–73 (3d Cir. 2013); *D'Agostino v. CECOMRDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010) ("The Court need not, however, credit a *pro se* plaintiffs 'bald assertions' or 'legal conclusions.'"). A litigant's *pro se* status likewise does not relieve him or her of the obligation to "clearly and specifically" identify which claims pertain to which defendants. *Pushkin*, 2013 WL 1792501, at *4.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

III.     **Discussion**

Garfield raises a number of arguments in support of dismissal. (*See generally* D.E. No. 119-1). As outlined below, Plaintiff's Complaint must be dismissed because Plaintiff fails to allege any claim for which relief can be granted.

A.     **Failure to Allege § 1983 *Monell* Claim**

Plaintiff's Complaint must be dismissed because Plaintiff has not plausibly alleged the existence of a policy or custom that was the proximate cause of her alleged deprivation of rights.

Section 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278

(3d Cir. 2004). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, but "it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom," *Beck*, 89 F.3d at 971.

"Policy is made when a decisionmaker [with] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Wright v. City of Philadelphia*, 685 F. App'x 142, 146 (3d Cir. 2017). Government custom can be demonstrated "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (explaining the three situations where acts of a government employee may be deemed to be the result of a policy or custom of the government entity).

Moreover, a plaintiff must also show that the unlawful "policy or custom was the proximate cause of the injuries suffered." *Bielevicz*, 915 F.2d at 850 (citing *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir. 1984)). There must be "a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.*

Thus, to establish municipal liability the plaintiff must demonstrate: 1) the existence of an unlawful policy or custom, 2) that she suffered a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States, and 3) that the policy or custom was the

proximate cause of the alleged deprivation. *See id.*; *see also Estate of Fabics*, 674 F. App'x at 211 (3d Cir. 2016) ("But, in failing to trace the alleged constitutional violations to an official custom or policy of the municipality . . . Appellants fail to state a claim against these defendants under Rule 12(b)(6)").

Here, Plaintiff has failed to allege the existence of a policy or custom that was the proximate cause of the alleged deprivation of her constitutional rights. Plaintiff argues that her Complaint alleges that Garfield had an unlawful policy, pointing the Court to § 181-3. (*See* D.E. No. 125 at 2). She alleges that she was charged with violating this ordinance four times, but that the state court found that § 181-3 was unconstitutional. (*See id.*; TAC ¶¶ 18, 34 & 89). She asserts that Garfield continued to protect the validity of § 181-3 by appealing the state court's decision. (*See* TAC ¶¶ 89 & 94). Further, she notes that even when Garfield amended § 181-3, the ordinance still failed to comply with the Fourth Amendment, prompting Plaintiff to file another action. (*Id.* ¶ 91). Plaintiff contends that these actions demonstrate Garfield's indifference to the Fourth Amendment and show Garfield had an unlawful policy. (*See id.* ¶¶ 17, 18, 95 & 117; D.E. No. 125 at 4). Plaintiff does not allege any other Garfield policy or custom, relying exclusively on § 181-3 as the basis of all her *Monell* claims. (*See generally* TAC; D.E. No. 125 at 2).

However, Plaintiff fails to connect how this alleged Garfield policy *caused* her alleged injuries in this action. Specifically, aside from alleging that between 2009 and 2010 she received four summonses for, and she was found guilty of, violating § 181-3 (*see* TAC ¶ 18), Plaintiff does not provide any other factual allegations to support those incidents and her Complaint does not assert any claims based on these events.[3] (*See generally id.*). Rather, Plaintiff's alleged injuries

---

[3]        Plaintiff was subject to three trials, occurring on January 12, 2010 and March 2, 2010. *See Heine*, 35 A.3d at 693 n.1. The appellate division dismissed all § 181-3 related charges against Plaintiff. *Id.* at 701.

all arise from the events that began in September 2010, when Plaintiff and her tenants were ordered to vacate the Property until she completed the necessary repairs.  (*See generally id.*).  As such, the facts that Garfield enacted and enforced § 181-3, that Plaintiff was charged with violating § 181-3 four times, that she was found guilty of violating § 181-3 by the municipal court, and that§ 181-3 was found to be unconstitutional have no connection to the alleged constitutional violations in this action, which arose several months later.

For instance, Plaintiff does not allege that the Fourth Amendment violations were caused because of the enactment or enforcement of § 181-3.  (*See generally* TAC).  Rather, the Complaint and attached exhibits make plain that the alleged searches occurred independently from § 181-3.  First, the alleged entries on September 2, 2010, and May 2, 2011, were undertaken by police officers—apparently pursuant to exigent circumstances[4]—and not by the Garfield Construction Official seeking to conduct an applicable code inspection.  (*See* TAC ¶ 45; *id.* at 39–40)[5].  Second, the alleged entries that occurred on October 2010, November 2010, and April 2011 were

---

[4]     The May 2 2011 entry occurred as a result of reports of possible animal cruelty and that an individual had trespassed on the Property.  (*See* TAC at 21 & 39).  And the September 2, 2011 entry apparently occurred after a domestic disturbance call, where one of Plaintiff's tenants tipped the police that there were unlawful weapons in the garage.  (*See* D.E. No. 88 at 56:1–7; D.E. No. 57-3 at 136:11–23 & 137:8–13; 18–25).

[5]     Specifically, § 181-3 stated that:

> *The Construction Official* is hereby authorized and directed to make inspections to determine the condition of dwellings, dwelling units, rooming units and premises located within the City of Garfield in order that he may perform his duty of safeguarding the health and safety of the occupants of dwellings and of the general public. For the purpose of making such inspections the Construction Official is hereby authorized to enter, examine and survey at all reasonable times all dwellings, dwelling units, rooming units and premises. The owner or occupant of every dwelling, dwelling unit and rooming unit, or the person in charge thereof, shall give the Construction Official free access to such dwelling, dwelling unit or rooming unit and its premises at all reasonable times for the purpose of such inspection, examination and survey. Every occupant of a dwelling or dwelling unit shall give the owner thereof or his agent or employee access to any part of such dwelling or dwelling unit or its premises at all reasonable times for the purpose of making such repairs or alterations as are necessary to effect compliance with the provisions of this chapter or with any lawful rule or regulation adopted or any lawful order issued pursuant to the provisions of this chapter.

*Heine*, 35 A.3d at 694 (quoting City of Garfield, N.J. Code § 181-3) (emphasis added).

-12-

undertaken by individuals who are not associated with Garfield, and therefore not associated with any enforcement of § 181-3. (*See* TAC ¶¶ 54–55 & 61; *see also id.* at 59). Third and finally, the September 14, 2010 entry occurred after one of the tenants allowed the officials to enter and inspect the Property. (*See id.* ¶ 51).[6] Thus, Plaintiff's Complaint fails to show how these alleged Fourth Amendment violations, if they are actually unreasonable searches and seizures at all, were proximately caused by Garfield's enforcement of § 181-3 or by any other policy or custom.[7]

Similarly, Plaintiff fails to trace the Fourteenth Amendment due process claim, the Fifth Amendment inverse condemnation claim, and the Fifth Amendment excessive property tax claim to § 181-3 or to any other policy or custom instituted by Garfield. These claims arise from the Imminent Hazard Notice and related enforcement activity, which has allegedly prevented Plaintiff from returning to the Property until she completes the required repairs. (*See, e.g.*, TAC ¶¶ 98, 103 & 124). But the Complaint does not link this activity to the implementation or enforcement of § 181-3, or to any other policy or custom. (*See generally id.*). As previously noted, a tenant consented to the entry by the inspectors (*see id.* ¶ 51), and Plaintiff does not allege or argue that this tenant consented because she was threatened with prosecution for violating § 181-3. (*See generally id.*). Thus, Plaintiff fails to show a causal link between the alleged policy and the alleged violations of her Fifth and Fourteenth Amendment rights.

Finally, Plaintiff's First Amendment claim is based entirely on the conclusory assertion that Garfield has an "adversarial view" of Plaintiff due to her continued defiance of Garfield's

---

[6] The Complaint also appears to allege that the "Tax office" paid an individual to take photographs of the Property's exterior and interior, apparently in connection with the tax assessment. (*See* TAC ¶ 67). But Plaintiff fails to identify when this occurred and, as with the other alleged Fourth Amendment "searches," Plaintiff fails to allege what connection, if any, this alleged entry has with § 181-3 or any other policy or custom.

[7] Additionally, the Court notes that Plaintiff's Fourth Amendment claim is likely also barred by the preclusion doctrines. *See Fabics*, 2015 WL 5167153, at *1 (dismissing, among other things, claims that Garfield had violated Plaintiff's Fourth Amendment rights by conducting "unlawful/unauthorized 'administrative searches'" of the Property).

actions.  (*See id.* ¶ 114).  She appears to rely on the summonses Garfield continued to issue after the state court overturned § 181-3.  (*Id.* ¶ 117).  She asserts, conclusorily, that "[c]learly the intention was to retaliate against [Plaintiff] for speaking against the City's Policy."  (*Id.*).  The record demonstrates, however, that these summonses were not related to § 181-3 or the state court's finding that § 181-3 was unconstitutional.  Rather, the summonses and fines were issued pursuant to the notices Plaintiff received on September 14, 2010.  (*See* TAC at 28–34).  Particularly, the Notices and Orders of Penalty specifically state that additional fines would be imposed for each week that the identified UCC violations remained unresolved.  (*Id.* at 28–30).  Similarly, the Imminent Hazard Notice states that failure to correct the outlined fire code violations by the specified date would result in daily penalties for each violation.  (*Id.* at 31).  Thus, Plaintiff has failed to plausibly identify a causal link between the protected activity and the alleged retaliation.  *See Abdur-Raheem v. New Jersey Dep't of Corr.*, No. 15-1743, 2017 WL 1050581, at *17 (D.N.J. Mar. 20, 2017).

In short, after almost eight years since initiating this action, after multiple related lawsuits and administrative actions filed both in state and federal court, after participating in two hearings before the Undersigned in which the Court explored the factual basis of each alleged claim in-depth, and after several opportunities to amend the complaint with the benefit of discovery, Plaintiff *still* cannot point to a Garfield policy or custom that was the cause of her alleged constitutional rights violations.  Therefore, Plaintiff's Complaint must be dismissed.  *See Estate of Fabics*, 674 F. App'x at 211 ("But, in failing to trace the alleged constitutional violations to an official custom or policy of the municipality . . . Appellants fail to state a claim against these defendants under Rule 12(b)(6)").

**B. Additional Grounds for Dismissal**

In addition to the grounds just outlined, Plaintiff's Complaint may also be dismissed for the following reasons.

**1. Count II**

***Fourteenth Amendment Due Process Claim.*** Plaintiff fails to allege a procedural due process violation. First, the Complaint and attached exhibits demonstrate that Garfield was properly acting pursuant to the UCC and UFC when Garfield ordered Plaintiff to vacate the Property until she completed the needed repairs. (*See* TAC ¶ 20; *id.* at 28–34). The municipal code empowers the local fire department and fire safety official to enforce the Uniform Fire Safety Act and New Jersey Uniform Fire Code within the City of Garfield. *See* City of Garfield, N.J. Code §§ 142-1, 142-2. These regulations have not been found to be unconstitutional, and Plaintiff does not challenge their validity in this action. (*See generally* TAC). Rather, the Complaint, attached exhibits, and the substantial record that has developed through the multiple litigations brought by Plaintiff demonstrate that the Property was in a state of neglect and disrepair, with garbage and debris strewn about. (*See, e.g.*, TAC at 20–21); *Heine*, 337 F. Supp. 3d at 479 n.9 (noting that on September 14, 2010, a municipal complaint was also filed against Plaintiff "based on excessive garbage and rubbish on the property" and that the report issued by the Department of Community affairs stated that the Property was infested by bed bugs); *State v. Heine*, No. A-0087-10T1, 2012 WL 163004, at *1 (N.J. Super. Ct. App. Div. Jan. 20, 2012) (upholding conviction of Plaintiff for failing to maintain exterior of property in a clean, safe, and sanitary condition when evidence showed the accumulation of rotting garbage and debris on the Property).

For example, exhibits attached to the Complaint indicate that Plaintiff violated the UCC by constructing additional rooms in the attic without obtaining permits. (*See* TAC at 21 & 28–30).

Additionally, the September 14, 2010 Imminent Hazard Notice was imposed after the Garfield officials discovered at least eleven imminent hazards on the Property. (*See id.* at 21 & 31–34). As Judge McNulty recently stated in a related action brought by Plaintiff,

> There is no doubt about what those imminent hazards were; they are listed in the Notice. They include the following:
> • Lack of smoke detectors in second and third floor dwelling units
> • Front stairway and hallway off front porch obstructed
> • Bedrooms and door going to second floor had prohibited surface locks
> • Lack of second means of egress from certain areas
> • Non-rated doors in bedrooms and corridors of second and third floor
> • No sprinkler system
> • Other precautions against fire spreading needed in porch and basement.

*Heine*, 337 F. Supp. 3d at 479 (footnote omitted).

Moreover, all the notices Plaintiff received specifically instructed Plaintiff about her rights to pursue an administrative appeal (*see* TAC at 28–30 & 34), which Plaintiff exercised (*see id.* ¶ 102). Plaintiff asserted her rights before an administrative law judge, who found that she was running a rooming house. *See Heine v. Dep't of Cmty. Affairs, Bureau of Rooming & Boarding House Standards*, No. A-2113-11T1, 2013 WL 1759919, at *1 (N.J. Super. Ct. App. Div. Apr. 25, 2013.). She subsequently appealed to the Commissioner of New Jersey Department of Community Affairs, who affirmed, and then to the Superior Court Appellate Division, which also affirmed. *Id.* Plaintiff also filed related actions in district court against the Department of Community Affairs to challenge the designation of the property as a rooming house. *See, e.g.*, *Heine*, 337 F. Supp. 3d at 480–82 (finding the Property was properly designated as a rooming house); *see also Estate of Fabics*, 674 F. App'x at 208; *Heine v. Dir. of Codes & Standards*, No. 15-8210, 2017 WL 3981135, at *11 (D.N.J. Sept. 11, 2017).

Plaintiff has also challenged the Imminent Hazard Notice as constituting a regulatory taking. For example, Plaintiff was a named defendant in a state-court action filed by Stephen

Gilbert that sought to divest Plaintiff of her ownership interest in the Property. *See Gilbert v. Heine*, No. A-3719-10T4, 2015 WL 1914291 (N.J. Super. Ct. App. Div. Apr. 29, 2015). Plaintiff filed a third-party complaint against Garfield, challenging Garfield's order that she was running a rooming house and that the premises needed to be vacated until the needed repairs were completed. (*See* D.E. No. 119-3, Transcript of Proceeding Superior Court of New Jersey Garfield Municipal Court, 2/9/10 at 81–82). The superior court granted Garfield's motion to dismiss, noting that there was no basis for finding that Garfield had acted improperly. (*See id.* at 83).

Similarly, in her tax assessment appeal Plaintiff argued that the Imminent Hazard Notice deprived the Property of all value. *Heine*, No. 014091-2014, 2017 WL 65237, at *4. She raised substantially all the same arguments raised here, asserting that the Property had been effectively condemned and deprived of value. *See id.* In upholding the tax assessment, the state court rejected Plaintiff's arguments noting that she had failed to take any action to affect the necessary repairs. *Id.* at *5 ("It was always within plaintiff's control to use the property in a legally permissible manner. It was not, as the plaintiff maintained, the actions of the City that prohibited her from using the subject property. The City instead prohibited plaintiff from using the property in an illegal and legally impermissible manner.").

All of these separate proceedings have upheld the code violations and the order to vacate at issue here, and have found no issue with Garfield's enforcement of the relevant construction and fire code regulations. Plaintiff, thus, was provided with, and indeed took advantage of, multiple avenues to protect her rights. Plaintiff cannot now possibly claim that her due process rights were violated.[8] *See Miles v. Twp. of Barnegat*, No. 05-1661, 2008 WL 89910, at *6 (D.N.J.

---

[8]     The Complaint also states that "no notice of the restrictive ordinances is given to prospective buyers or property and residents" because Ordinance 2382 improperly references the International Property Maintenance code. (TAC ¶ 98 (stating that the International Property Maintenance code is a "copyrighted document")). Plaintiff continues that "some of the City's enforcement of their rules and Ordinances appear to be capricious and arbitrary

Jan. 7, 2008), *aff'd*, 343 F. App'x 841 (3d Cir. 2009) ("In other words, when a state affords a full judicial mechanism with which to challenge the administrative decision in question, the state provides adequate procedural due process[ ] whether or not the plaintiff avails him or herself of the provided appeal mechanism.") (quoting *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995)).

     ***Fifth Amendment Inverse Condemnation Claim.*** For largely the same reasons, Plaintiff's inverse condemnation claim fails as Plaintiff cannot show that a taking has occurred. Plaintiff's entire basis for this claim is that Garfield's actions in enforcing the UCC and UFC have removed "all reasonable use of the property by overregulation" and by requiring "impossible expensive repairs." (*See* TAC ¶ 103).

     "The initial step in any taking analysis . . . is whether the challenged governmental action advances a legitimate public interest," and "[i]n this step, the governmental action is entitled to a presumption that it does advance the public interest." *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1030 (3d Cir. 1987) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)). Under the police power, a township, such as Garfield, may regulate the use of property in its jurisdiction to promote the public good. *See id.* A property owner alleging inverse condemnation is only entitled to recover "if the government action deprived [her] of all or substantially all of the beneficial use of the property." *In re 106 N. Walnut, LLC*, 447 F. App'x 305, 308 (3d Cir. 2011) (internal quotation mark omitted) (holding that a municipality may destroy a building that was unsafe and a public eyesore).

---

because they do not give notice of the wrongs that the individual receiving the charges may have committed." (*Id.*). The Court need not, however, credit such bald assertions devoid of any factual support. *See Iqbal*, 556 U.S. at 678. And in any event, Plaintiff is precluded from raising these issues again. *See Heine*, 35 A.3d at 703 (rejecting Plaintiff's identical lack of notice argument); *see also Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002).

As discussed above, Garfield was well within its police powers to enforce the UCC and UFC, and to order Plaintiff to vacate the Property in light of the numerous code violations and imminent hazards identified. *See Pace*, 808 F.2d at 1030; *In re 106 N. Walnut, LLC*, 447 F. App'x at 308. But more importantly, Plaintiff's Complaint simply fails to show that *Garfield's actions have denied Plaintiff of all or substantially all of the beneficial use of the Property. See In re 106 N. Walnut, LLC*, 447 F. App'x at 308. Under the Notices and Orders of Penalty and the Imminent Hazard Notice, it has always been up to Plaintiff to take the necessary steps to complete the necessary repairs. (*See* TAC at 22); *see also Heine*, No. 014091-2014, 2017 WL 65237, at *5. Indeed, it appears that Plaintiff was even advised that she can apply for a variance. (*See* TAC ¶ 22); *Heine*, No. 15-8210, 2017 WL 3981135, at *3. Yet, the Complaint, attached exhibits, and related litigation records demonstrate that Plaintiff has failed to do anything to attempt to request such a variance, has failed repair or maintain the Property, and has left the Property to continue to deteriorate. (*See* TAC at 22 ("Plaintiff has not applied to the Building Department to address violations or provide a plan whereby she will complete what needs to be completed for the Property to be used lawfully for habitation.")); *see also Heine*, No. 014091-2014, 2017 WL 65237, at *5 ("It was always within plaintiff's control to use the property in a legally permissible manner. It was not, as the plaintiff maintained, the actions of the City that prohibited her from using the subject property. The City instead prohibited plaintiff from using the property in an illegal and legally impermissible manner.").

Because Plaintiff cannot show that Garfield's actions have unlawfully removed all economically viable use of the Property, her inverse condemnation claim fails. *See In re 106 N. Walnut, LLC*, 447 F. App'x at 309 (finding no inverse condemnation where there was no evidence that the city prevented property owner from renovating the property into rentable or marketable

condition).

### 2.    Count IV

Plaintiff's brand new First Amendment claim is time-barred. Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment relates back to the original filing date when the asserted claim arises out of "the conduct, transaction, or occurrence set out—or attempted to be set out— in the original pleading." Generally, relation back is permitted only "where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds. . . ." *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (internal quotation marks omitted). "Conversely, amendments that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *Id.* (internal quotation marks omitted); *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998) ("The pertinent inquiry, in this respect, is whether the original complaint gave the defendant fair notice of the newly alleged claims.").

Plaintiff asserted this new retaliation claim for the first time on August 22, 2016. (*See* TAC). This claim arises from actions allegedly taken by Garfield in 2012, after the New Jersey appellate court deemed § 181-3 unconstitutional. (*See* TAC ¶¶ 116–119). The original complaint, however, was filed on May 6, 2011. (*See* D.E. No. 1). Therefore, logically this new claim cannot arise from the same conduct, transaction, or occurrence set out in the original pleading. *See Glover*, 698 F.3d at 147 (holding relation back did not apply when the newly added claim "differed in 'time and type' from the claims earlier alleged").

Plaintiff's retaliation claim accrued, at the latest, in 2012 (*see* TAC ¶ 36), meaning that the claim became time-barred in 2014. *See Cresci v. Gyess*, No. 17-2342, 2018 WL 4961466, at *11 (D.N.J. Oct. 15, 2018) (noting section 1983 retaliation claims are subject to a two-year statute of

limitations) (citing *Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (per curiam)).  Plaintiff did not assert this claim until August 22, 2016.  (*See* TAC).  Thus, Plaintiff's retaliation claim is barred by the statute of limitations.

### 3.   Count V

Finally, Count V asserts that Garfield violated Plaintiff's Fifth Amendment right to property because she has been "charged excessive property tax for a property that cannot be used." (TAC ¶ 124).  Particularly, she asserts that the tax assessor has improperly included the structure in the valuation of the Property.  (*Id.* ¶¶ 126–128).  Plaintiff admits, however, that she has "filed multiple tax appeals and has been unsuccessful in removing the valuation of the structure from the property."  (*Id.*  ¶ 128).  Indeed, during her tax appeal she asserted these same issues and arguments, but the state court rejected them, dismissed Plaintiff's complaint, and affirmed the tax assessment.  *See Heine*, No. 014091-2014, 2017 WL 65237, at *1.  Thus, there was a final judgment on the merits, involving the same parties, and arising from the same cause of action upon which the instant claim is based.  *See Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991).  Additionally, the state tax court issued a final judgment against Plaintiff on the identical issues raised by this claim, and these issues were actually litigated and essential to resolving that prior proceeding.  *See Delaware River Port Auth.*, 290 F.3d at 573.  Consequently, this claim is barred by res judicata and collateral estoppel.

## IV.   Conclusion

For the reasons stated, the Court GRANTS Garfield's motion for judgment on the pleadings.  Because amending would be an exercise in futility, the Court dismisses Plaintiffs' Complaint *with prejudice*.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**